IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2011 Session

## STATE OF TENNESSEE v. MATTHEW EDWIN THOMPSON

**Appeal from the Criminal Court for Hamilton County**
**No. 270409    Rebecca J. Stern, Judge**

**No. E2011-00784-CCA-R3-CD - Filed May 17, 2012**

The Defendant, Matthew Edwin Thompson, pled guilty to two counts of theft of property valued at $1000 or more but less than $10,000, a Class D felony. See T.C.A. §§ 39-14-103, -105 (2010). He was sentenced as a Range III, persistent offender to eight years' confinement for each conviction, to be served concurrently. On appeal, the Defendant contends that his sentences are excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Justin G. Woodward, Chattanooga, Tennessee, for the appellant, Matthew Edwin Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William H. Cox, III, District Attorney General; and Brian Finlay, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the guilty plea hearing, the State recited the facts that it would have proven had there been a trial:

> [O]n August 25, 2008, and then again on August 28, 2008, . . .
> a one-time girlfriend of the defendant, and then David Draper,
> the landlord of the defendant, each reported that some items had
> been taken from them. From Mr. Draper there were some bikes,
> some mountain climbing equipment, some tools were taken
> from him, from the residence where [the Defendant] was living

next door. And Ms. Herman advised that she'd had two bicycles taken from [her]. Some of these items were actually pawned by the defendant.

At the sentencing hearing, James Elliott, the Defendant's stepfather, testified that he had known the Defendant for twenty-three years, that the Defendant lived with him and his wife for about the last six months, and that the Defendant lived with them previously. He said that the Defendant had been working at a car wash for about six months and that the Defendant contributed to the household expenses. He saw the Defendant daily, and the Defendant spent every night at home after attending Alcoholics Anonymous or Narcotics Anonymous meetings. He had never seen the Defendant remain sober for such a long period of time. He said that he had not seen any conduct that would indicate the Defendant continued to use drugs or alcohol and that there had not been any arguments or physical altercations with the Defendant. He said the Defendant attended "CADAS" meetings from "time to time" to address mental health and emotional conditions. He had no concerns about the Defendant's continuing to live with him.

The Defendant testified that the previous spring, the trial court furloughed him to Miracle Lake, a substance abuse treatment facility. He said that he completed the treatment at Miracle Lake, that he attended six weeks of outpatient treatment at CADAS, that he was currently in a continuing care program, and that he attended Narcotics Anonymous meetings each night. He said that he had a treatment sponsor through Alcoholics Anonymous and that he intended to continue his treatment with CADAS, Narcotics Anonymous, and Alcoholics Anonymous. He said the last time he "used" was on the night of his arrest, despite having "plenty" of chances to use drugs while in jail.

The Defendant testified that he worked about twenty hours per week for Hamilton Place Car Wash and that his boss respected him "a great deal." He said his sponsor and his boss wrote letters to the trial court on his behalf. He agreed he had a lengthy criminal record but said his offenses were the result of his drug and alcohol abuse. He said he had a "new-found love for life" and a desire to continue his education and to help others with substance abuse problems. He said he was a good candidate for probation because he was employed and wanted to "turn [his] life around" by becoming a productive member of society.

On cross-examination, the Defendant testified that he last drank alcohol the night of his arrest. He said that he relapsed on September 19, 2008, and that around September 25, he pawned items he stole because of his drug problem. He said that he was arrested on October 4, 2008, and that he had been sober since October 5.

The trial court found that the Defendant had a "terrible" criminal record, that he had not been successful on probation, and that he had a mental health diagnosis indicating little potential for long-term rehabilitation. The court noted that although it previously furloughed the Defendant to Miracle Lake, it lacked information at the time of that hearing related to the Defendant's mental health. The court noted that the Defendant was diagnosed with malingering, substance-induced mood disorder, polysubstance dependance, antisocial personality disorder, narcissistic personality disorder, and bipolar disorder. The court found that confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct and that measures less restrictive than confinement were frequently applied unsuccessfully to the Defendant. This appeal followed.

The Defendant contends that his sentences are excessive and that ordering confinement was an error because less restrictive alternatives were appropriate in light of his success with mental health treatment and substance abuse treatment while furloughed. The State contends that the trial court did not err by ordering confinement because the Defendant had an extensive criminal record and had his probation revoked previously. We conclude that the trial court did not err by ordering confinement.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "'the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

The Defendant argues that his success with mental health and substance abuse treatment, coupled with his success in maintaining a job during the course of his furlough, establishes that he is a good candidate for probation and that he has a high likelihood of success on probation. The record reflects that the Defendant was sentenced as a Range III, persistent offender, which rendered him ineligible to be considered a favorable candidate for alternative sentencing options. See T.C.A. § 40-35-102(6)(A) (2010) (providing that "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing"). Despite this, the Defendant was eligible for probation or community corrections sentences. See T.C.A. §§ 40-35-303(a) (2006) (amended 2007, 2009, 2010), 40-36-106(a)(1) (2010). However, mere eligibility does not automatically entitle a defendant to probation or a sentence under the Community Corrections Act. See Fletcher, 805 S.W.2d at 787; State v. Beverly Dixon, No. W2004-00194-CCA-R3-CD, Shelby County, slip op. at 10 (Tenn. Crim. App. June 30, 2005) (citing State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998)). Furthermore, the statutory provisions regarding alternative sentences must be read together with the Sentencing Act as a whole. See Fletcher, 805 S.W.2d at 787-88; State v. Wagner, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988).

When determining if incarceration is appropriate, a trial court should consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The record reflects that the Defendant was previously convicted of three counts of aggravated burglary, one count of burglary, one count of assault, two counts of possession of cocaine, two counts of possession of drug paraphernalia, five counts of theft of property valued at $1000 or more but less than $10,000, two counts of theft of property valued at more than $500 but less than $1000, thirteen counts of theft of property valued at $500 or less, four counts of passing worthless checks, one count of forgery, two counts of attempted forgery, two counts of vandalism, two counts of driving on a suspended license, one count

-4-

of reckless driving, and one count of criminal impersonation. The Defendant had his probation or parole revoked six times. Although the record indicates the Defendant complied with the terms of his most recent furlough, his extensive criminal history and repeated failures to comply with the terms of his probation and parole supported the trial court's imposition of confinement. The Defendant has not established that the trial court erred in ordering confinement. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____

JOSEPH M. TIPTON, PRESIDING JUDGE